**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Latricia Flowers-Carter, et al.,

Plaintiffs,

v.

Braun Corporation,

Defendant.

No. CV-18-03836-PHX-DWL

**ORDER**

On March 31, 2021, after briefing and oral argument, the Court resolved the parties' cross-motions for partial summary judgment. (Doc. 213.) The Court granted partial summary judgment in Plaintiffs' favor with respect to Braun Corporation's ("Braun") liability under the Arizona Assistive Devices Warranty Act ("AADWA"), A.R.S. § 44-1351 *et seq*. (*Id.* at 15-33.) The Court granted partial summary judgment in Braun's favor with respect to Plaintiffs' common-law breach of warranty claim and on Plaintiffs' ability to recover non-economic damages under AADWA. (*Id.* at 34-46.)

Plaintiffs subsequently filed a motion to reconsider aspects of the Court's summary judgment ruling (Doc. 216), which the Court denied (Doc. 217). Plaintiffs now ask the Court to certify its summary judgment and reconsideration orders for interlocutory appeal under 28 U.S.C. § 1292(b). (Doc. 222.) Braun filed a response in opposition (Doc. 224) and Plaintiffs filed a reply (Doc. 227). For the following reasons, the certification request is denied.

…

## DISCUSSION

I. Legal Standard

The statute invoked in Plaintiffs' motion, 28 U.S.C. § 1292(b), provides in relevant part as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

*Id.* As the Ninth Circuit has explained, "Section 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025-26 (9th Cir. 1981). To grant a § 1292(b) motion, a district court must first find "that the certification requirements of the statute have been met. These certification requirements are (1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *Id.* at 1026. Section 1292(b) is "to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id.*

"The decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court." *Heaton v. Soc. Fin., Inc.*, 2016 WL 232433, *2 (N.D. Cal. 2016) (internal quotation marks omitted). District courts should certify non-final orders under § 1292(b) only in "rare circumstances," and "[e]ven where the district court makes such a certification, the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). The party seeking certification "has the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Villareal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1067 (D. Ariz. 2015) (quotation marks omitted).

II. Analysis

Plaintiffs move for certification of the same two issues they earlier asked the court to reconsider: (1) the denial of summary judgment as to whether Plaintiff Latricia Flowers-Carter's ("Flowers-Carter") May 1, 2018 conversation with a Braun representative constituted a replacement request sufficient to trigger AADWA's 30-day window; and (2) the categories of damages available under AADWA. (Doc. 222 at 1-2.)[1]

A. **Controlling Question Of Law**

An issue presents a "controlling question of law" if its resolution on appeal "could materially affect the outcome of litigation in the district court." *Cement Antitrust Litig.*, 673 F.2d at 1026. Generally speaking, a "question of law" is "a pure legal question, such that the court of appeals could decide the question quickly and cleanly without having to study the record." *Heaton*, 2016 WL 232433 at *3 (internal quotation marks omitted).

1. May 1, 2018 Conversation

One question presented in the parties' cross-motions for summary judgment was whether, and when, Plaintiffs effectively invoked AAWDA's refund or replacement provision. (*See generally* Doc. 213 at 21-32.) Plaintiffs argued that on May 1, 2018, Flowers-Carter demanded that her defective van be replaced, and consequently Braun had a duty under AADWA to provide a replacement within 30 days. (*Id.* at 21.) The Court determined otherwise, concluding that "a reasonable juror could conclude that Flowers-Carter did not make a replacement request during the May 1, 2018 telephone call with [a Braun representative] (because she withdrew that request and agreed to allow Braun to make another repair attempt)." (*Id.* at 22.) Nevertheless, the Court proceeded to find that Plaintiffs had made a separate, effective refund request on August 10, 2018 that Braun didn't timely honor—and, thus, Braun committed an AADWA violation by no later than September 10, 2018. (*Id.* at 31-32.)

---

[1] Section 44-1355(C) reads in full: "In addition to any other remedy, a consumer may bring an action in superior court to recover damages caused by a violation of this section. The court may award the prevailing consumer triple the amount of any pecuniary loss plus costs, disbursements and attorney fees. The court may also award any equitable relief deemed appropriate by the court."

Plaintiffs argue the denial of summary judgment as to the liability-triggering consequences of the May 1, 2018 conversation is a controlling question of law. They construe the Court's order as ruling that "once a consumer lawfully exercises her right under the AADWA to direct the manufacturer to refund or replace the assistive device, her directive can be later withdrawn or otherwise negated due to pressure from the manufacturer or the manufacturer's improper subsequent negotiations with the consumer over the Act's remedies." (Doc. 222 at 3-4.)

This is an inaccurate characterization of the Court's ruling. As stated in the order denying the motion for reconsideration, "the issue raised by Plaintiffs' motion for summary judgment was whether, viewing all evidence in the light most favorable to Braun and drawing all reasonable inferences in Braun's favor, Flowers-Carter *had* in fact directed Braun to replace the van on May 1, 2018." (Doc. 217 at 6.) The parties introduced conflicting evidence on this point, leaving its resolution up to the jury.

Plaintiffs argue that despite the factual nature of this ruling, if the Ninth Circuit were to reverse, such a reversal would "greatly affect the amount of damages recoverable and could allow Plaintiffs to prevail on summary judgment." (Doc. 222 at 4.) This argument is flawed. Plaintiffs already prevailed on summary judgment with respect to AADWA liability, so the only material effect of a reversal regarding the May 1, 2018 conversation would be that the damages clock would begin running earlier. This may ultimately affect the amount of damages Plaintiffs can recover, but Plaintiffs still have an opportunity to prove at trial that the clock should begin running from the May 1, 2018 conversation. Although a different outcome on appeal might affect the outcome of this litigation, it is difficult to see how it could *materially* affect it.

Moreover, the resolution of this dispute turns on a factual issue that is for the jury to decide. Under such circumstances, § 1292(b) certification is generally inappropriate. *See, e.g., Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 536 (9th Cir. 2018) ("[A]lthough Barnes did not request certification of an interlocutory appeal under 28 U.S.C. § 1292(b), we seriously doubt that the district court would have granted such a request given the

evidentiary nature of its rulings. In the district court's view, Barnes was not entitled to maintenance due to evidentiary insufficiency rather than a controlling question of law as required by § 1292(b)."); *SolarCity Corp. v. Salt River Project Agric. Improvement*, 2015 WL 9268212, *4 (D. Ariz. 2015) ("Because this issue turns on questions of fact and would only bar damages, not SolarCity's claims for equitable relief under the federal antitrust laws, it is not a controlling question of law."); *City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 13223884, *3 (C.D. Cal. 2011) (where appellate court would need to engage in "extensive factual review" on appeal, § 1292(b)'s "controlling question of law" requirement not met); *Harris v. Vector Mkting. Corp.*, 2009 WL 4050966, *2 (N.D. Cal. 2009) (collecting cases and noting that whether there is a genuine issue of material fact on summary judgment "is not the kind of question of law that [§ 1292(b)] is meant to cover."). *See also Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) ("[D]istrict judges should . . . remember that 'question of law' means an abstract legal issue rather than an issue of whether summary judgment should be granted.").

It's true that in certain cases, such as multiparty, multidistrict negligence cases, "examinations of factual and legal issues" might constitute "a controlling question of law." *Steering Comm. v. United States*, 6 F.3d 572, 575 (9th Cir. 1993) (internal quotation marks omitted). But these are "unusual cases" where resolution of factual and legal liability "is more closely analogous to the intermission which marks the conclusion of Act I of a two-act play than it is to numerous and sundry pretrial motions which may be regarded as mere scenes in Act I." *Id.* In this case, three closely related plaintiffs sue a single defendant for conduct related to the provision of a single faulty van conversion. This is not the rare case where certifying for appeal the resolution of closely intertwined factual and legal issues is proper.[2]

---

[2] It is true, as Plaintiffs contend, that "[t]he appropriate forum to review the denial of a summary judgment motion is through interlocutory appeal under 28 U.S.C. § 1292(b)" because appellate review of the denial after a trial on the merits would be "a pointless academic exercise." *Lum v. City & County of Honolulu*, 963 F.2d 1167, 1169-70 (9th Cir. 1992). The Court nonetheless concludes that interlocutory review is not appropriate in this case because of the fact-bound, evidentiary nature of this ruling. *Cf. Barnes*, 889 F.3d at 536.

2. <u>AADWA Damages</u>

Plaintiffs argue that the Court's interpretation of § 44-1355(C) is a controlling question of law because its resolution will materially affect the outcome of the case. (Doc. 222 at 3-4.) Plaintiffs argue that "[i]f the Ninth Circuit agrees with Plaintiffs, it changes Plaintiffs' recoverable damages and avoids a second trial on the issue of damages," while "[i]f the Ninth Circuit agrees with the Court, it resolves the issue of damages and increases the likelihood of a settlement prior to trial." (*Id.* at 4.) Braun focuses its argument on the second factor of the § 1292(b) analysis and does not directly address whether this issue constitutes a controlling question of law. (Doc. 224 at 5-6.)

The Court agrees with Plaintiffs that this issue presents a controlling question of law. Because the Court held that genuine disputes of material fact on the issue of damages existed, the parties will eventually need to conduct a trial on the issue of damages. Plaintiffs are correct that, after trial, if the Ninth Circuit were to disagree with the Court's interpretation of § 44-1355(C) and reverse, another trial might need to be conducted to determine the scope of Plaintiffs' nonpecuniary damages. This could materially affect the outcome of this case.

Furthermore, the scope of AADWA damages is a matter of statutory interpretation and presents a pure question of law the Ninth Circuit could resolve without needing to delve deeply into the record. *Cf. Scallon v. Scott Henry's Winery Corp.*, 686 F. App'x 495, 495 (9th Cir. 2017) (reviewing interpretation of state statute pursuant to § 1292(b)); *Helman v. Alcoa Glob. Fasteners Inc.*, 2009 WL 2058541, *1 (C.D. Cal. 2009) (certifying statutory interpretation question for immediate appeal under § 1292(b)). Plaintiffs have carried their burden on this factor.

B. **Substantial Ground For Difference Of Opinion**

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the

question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (internal quotation marks omitted). However, "just because a court is the first to rule on a particular question . . . does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.*

1. May 1, 2018 Conversation

Plaintiffs argue there is substantial ground for difference of opinion regarding the May 1, 2018 conversation because it presents a novel and difficult question of first impression over which reasonable judges might differ. Plaintiffs note that cases interpreting Wisconsin's motor vehicle lemon law[3] have concluded, in Plaintiffs' words, that "a manufacturer's thirty-day performance deadline is absolute once the consumer meets his or her duty under the statute." (Doc. 222 at 5.)

As Braun correctly points out, this argument misses the mark. (Doc. 223 at 2-3.) The Court did not, as Plaintiffs suggest, rule that Flowers-Carter made an affirmative replacement demand, that Braun then rejected that demand using pressure or negotiations, and that such conduct was nevertheless permissible under AADWA. Instead, the Court held that a jury *could* conclude that although Flowers-Carter initially floated the idea of a replacement, she then withdrew this demand voluntarily in order to seek further repairs. It should go without saying that this does not mean the Court has decided that *is* what happened. It is merely that Braun's interpretation of this event—that Flowers-Carter initially discussed a replacement but then changed her mind and said she wanted further repairs instead—is plausible enough for a jury to find in Braun's favor, based on the disputed facts in the record. On the other hand, the jury could also conclude that Flowers-Carter made an effective replacement demand and Braun improperly failed to comply with this demand. A jury must decide this issue, because reasonable minds can disagree about the precise factual contours of the May 1, 2018 conversation and the parties' subsequent interactions. But there is not substantial ground for difference of opinion as to whether this

[3] The law is known as the Wisconsin Lemon Law and is discussed at length in the Court's summary judgment order. (Doc. 213 at 26-32.)

question is for the jury rather than the judge.

The authority on which Plaintiffs rely, *Chuch v. Chrysler Corp.*, 585 N.W.2d 685 (Wis. Ct. App. 1998), does not suggest otherwise. Leaving aside the obvious point that *Church* is a non-Arizona case dealing with a different statute, the outcome of *Church* is not inconsistent with the Court's denial of summary judgment regarding the May 1, 2018 conversation. *Church* held that the 30-day deadline established by Wisconsin's lemon law ("WILL") "was not suspended or delayed by the parties' disagreement" about the proper refund amount. *Id.* at 686. The court had no occasion to address the antecedent question of whether the refund request itself was effective. *See id.* at 687 (noting that Church made a refund offer under WILL). By contrast, in this case the facts surrounding whether Flowers-Carter did, in fact, make an effective replacement request are in dispute.

2. <u>AADWA Damages</u>

Plaintiffs argue that substantial ground for difference of opinion exists with respect to the Court's ruling on § 44-1355(C). In support, Plaintiffs largely reprise the arguments set forth in their summary judgment papers and motion for reconsideration, arguing without elaboration that "AADWA's plain language, structure, and purpose all indicate that consumers may recover all damages—both pecuniary and non-pecuniary—where a manufacturer violates the AADWA." (Doc. 222 at 5.) Braun responds that "Plaintiffs identify no authority so much as hinting that an Arizona court would interpret AADWA's damages provision as encompassing noneconomic damages," that "no Arizona court could reasonably resolve this issue in" a different way, and therefore interlocutory appeal "would be futile." (Doc. 224 at 4-5.) Plaintiffs reply by pointing to legislative history materials they previously cited (which the Court previously considered) regarding the distress disabled persons experience when they are deprived of assistive devices and argue that, given this backdrop, "it is natural to assume the legislature intended [noneconomic] damages to be recoverable in an AADWA action." (Doc. 227 at 3-4.)

Plaintiffs' arguments are unpersuasive. First, an interpretation of legislative history materials cannot override the plain language of a statute. *Cf. State v. Christian*, 66 P.3d

1241, 1243 (Ariz. 2003) ("In any case involving statutory interpretation we begin with the text of the statute. This is so because the best and most reliable index of a statute's meaning is the plain text of the statute. When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernable from the face of the statute.") (citations omitted).

Second, to the extent Arizona law authorizes consideration of legislative history materials for purposes of statutory interpretation, the relevant materials support, rather than undermine, the Court's interpretation of § 44-1355(C). The Arizona Senate Fact sheet for AADWA states, among other things, that AADWA "[a]llows the consumer to bring an action to Superior Court in order to recover damages due to a violation pertaining to this section *and specifies amounts in which the court can award*." Ariz. State Senate Fact Sheet for H.B. 2676, 43d Leg., 2d Reg. Sess. (Apr. 21, 1998) (emphasis added). This summary closely tracks the Court's understanding of the statute, which is that the first sentence of § 44-1355(C) allows a plaintiff to bring a lawsuit while the second sentence enumerates the types of relief the Court can award. This on-point legislative history is far more informative than the history Plaintiffs cite, which consists chiefly of correspondence from disabled individuals noting the hardships they endure when assistive devices malfunction. (Doc. 179-1 at 2-19.) Although Plaintiffs' proffered history may support the notion that AADWA is, in general, meant to protect disabled consumers, it says little if anything about the meaning of § 44-1355(C). To the extent Plaintiffs contend their proffered materials suggest that maximal recovery should be allowed, the Court directs them to its analysis regarding § 44-1355(C)'s provision of triple pecuniary losses, which likely reflects the legislature's awareness of the hardships that assistive device users may face. (Doc. 213 at 41.)

At bottom, although the parties' dispute concerning the scope of § 44-1355(C) presents an issue of first impression, and although Plaintiffs' arguments in favor of an expansive construction of that provision are not frivolous, the Court feels confident—both

for the reasons stated in prior orders (Doc. 213 at 36-41; Doc. 217 at 3-5) and for the reasons further elaborated here—that its summary judgment decision was correct. That decision was the product of extensive briefing, substantial deliberation, and careful analysis and was fully consistent with the Arizona law principle that a court may not "read into a statute something that is not within the *manifest intent* of the legislature as indicated by the statute itself" or "*inflate, expand, stretch,* or *extend* a statute to matters not falling within its express provisions" because "[i]t is for the legislature to make policy decisions about the scope of recoverable damages in a statutory cause of action." *In re Estate of Winn*, 237 P.3d 628, 630 (Ariz. Ct. App. 2010) (emphases added).[4] It is, of course, always possible that a different set of judges might reach a different conclusion, but the Court cannot say that it viewed this issue as presenting a particularly close call—or, to put in the parlance of § 1292(b), as presenting "substantial ground for difference of opinion." Plaintiffs have failed to meet their burden on this ground for interlocutory review.

**C. Immediate Appeal May Materially Advance The Litigation**

1. May 1, 2018 Conversation

Plaintiffs argue that an allowing immediate appeal "could avoid trial on one of Plaintiffs' AADWA claims." (Doc. 222 at 6.)

This argument is without merit. The same could be said anytime a court denies summary judgment. Further, as Braun points out, there are a number of issues that would still need to be resolved if the Ninth Circuit were to reverse the Court's holding as to the liability-triggering consequences of the May 1, 2018 conversation. (Doc. 224 at 4-5.) In particular, there is a potential fact dispute, which the Court expressly did not reach in its

---

[4] Plaintiffs also argue that guidance from the Ninth Circuit would be helpful because Arizona and many other jurisdictions have assistive device statutes, but there is a dearth of case law interpreting them. (Doc. 222 at 6-7; Doc. 227 at 3.) The Court disagrees that this assertion justifies interlocutory review under § 1292(b). First, Plaintiffs do not cite, and the Court did not uncover, any precedent suggesting that this type of consideration can factor into the § 1292(b) analysis. Second, Ninth Circuit review could serve as useful guidance for other jurisdictions, but of course would merely be persuasive rather than binding authority on this state-law issue. *Planning Grp. Of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.*, 246 P.3d 343, 348 (Ariz. 2011) ("Although we often find decisions of the Ninth Circuit persuasive, they are not binding on this Court."). Third, to the extent Ninth Circuit review would be useful, it will still be useful after final judgment, so this does not suggest a need for interlocutory review.

order (and does not reach now), about whether Flowers-Carter's refusal to speak with Braun after May 1, 2018 prevented Braun from providing the replacement. (Doc. 213 at 23 n.6.) Thus, a trial on the May 1, 2018 conversation would not necessarily be obviated by reversal as to the issue resolved in the summary judgment order. This case is therefore unlike others where § 1292(b) certification was proper because reversal might eliminate one or more parties or claims from the case. *Compare Reese v. BR Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("The district court correctly concluded that our reversal 'may' take BPXA, as a defendant, and Reese's control claims against all remaining defendants out of the case. That is sufficient to advance materially the litigation . . . .").

2. AADWA Damages

For substantially the same reasons that this issue constitutes a controlling issue of law, the Court concludes that it would also materially advance the ultimate termination of litigation. *Cf. Villareal*, 85 F. Supp. 3d at 1071 ("The third requirement for an interlocutory appeal—that the appeal must be likely to materially speed the termination of the litigation—is closely linked to the question of whether an issue of law is 'controlling,' because the district court should consider the effect of a reversal on the management of the case.") (internal quotation marks omitted). As noted, Ninth Circuit reversal after judgment could result in the need for a second trial on the issue of damages. Resolving this question on appeal now would foreclose that possibility.

This factor therefore weighs in favor of § 1292(b) certification.

D. **Conclusion**

1. May 1, 2018 Conversation

All three § 1292(b) factors weigh against certification. Certification on this question is not appropriate.

2. AADWA Damages

Although two out of three factors weigh in favor of certification, the second factor weighs against certification. Additionally, even if all three factors were satisfied, the Court would exercise its discretion to decline certification. *Krause v. Yavapai County*, 2020 WL

2512761, *5 (D. Ariz. 2020) ("Notwithstanding the factors set forth in *In re Cement Antitrust Litigation*, as noted above, the Court retains discretion to deny certification for interlocutory appeal.").

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for certification (Doc. 222) is **denied**.

Dated this 14th day of June, 2021.

Dominic W. Lanza
United States District Judge